IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Senior Ride Connection, *f/k/a* *ITNCharleston Trident*, | Civil Action No. 2:16-1353-RMG |
| Plaintiff, | |
| v. | ORDER |
| ITNAmerica, | |
| Defendant. | |

This matter is before the Court on Plaintiff's motion to transfer, or, in the alternative, to dismiss and on Defendant's motion to remand. For the reasons set forth below, the Court remands this case to the South Carolina Court of Common Pleas for the Ninth Judicial Circuit. Plaintiff's motion to transfer is denied as moot.

I.  **Background**

Defendant ITNAmerica is a nonprofit transportation network for senior citizens, based in Maine. Plaintiff Senior Ride Connection ("Senior Ride") is a Charleston-area nonprofit provider of transportation for senior citizens. Senior Ride affiliated with ITNAmerica through an affiliate agreement executed in August 2007. The agreement allows termination by Senior Ride with twelve month's written notice, with a covenant not to compete for a further year after termination. (Affiliate Agreement, Dkt. No. 1-3 at 19–20.) The status of the affiliate agreement is a matter of dispute. On December 8, 2015, Senior Ride filed a breach of contract action against ITNAmerica in South Carolina state court. After ITNAmerica removed and sought transfer to Maine, based on the affiliate agreement's forum-selection clause, Senior Ride dismissed its complaint and filed the present action in South Carolina state court. ITNAmerica again removed, and moves for transfer to Maine, or, alternatively, to dismiss Senior Ride's cause of action for breach of contract. (Mem.

Supp. Mot. Transfer, May 4, 2016, Dkt. No. 4.) Senior Ride moves to remand. (Mot. Remand, May 20, 2016, Dkt. No. 5.)

## II.   Legal Standard

A federal district court is a court of limited jurisdiction and has a duty to dismiss a case whenever it appears that subject matter jurisdiction is lacking. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Moreover, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal quotation marks omitted).

"Federal courts are presumptively without jurisdiction over civil actions, and the burden of establishing the contrary rests firmly on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal removal jurisdiction exists if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removing party has the burden of establishing that removal jurisdiction is proper. *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006). The removal statute is strictly construed against removal jurisdiction, and any doubts as to jurisdiction weigh in favor of remand. *Id.* However, if the amount alleged in the complaint in good faith meets the amount in controversy threshold, then jurisdiction is established unless "it [is] a legal certainty that, at the time of the complaint, the plaintiff could not recover the requisite amount." *Shanaghan v. Cahill*, 58 F.3d 106, 111 (4th Cir. 1995).

## III.   Discussion

ITNAmerica removed this action based on diversity jurisdiction, which requires complete diversity of citizenship and an amount in controversy of at least $75,000. Senior Ride argues that this Court lacks subject-matter jurisdiction because the amount in controversy is less than $75,000. Because the motion to remand challenges the Court's subject-matter jurisdiction, the Court must

address it before ITNAmerica's motion to transfer or dismiss. *See Owens-Illinois*, 186 F.3d at 442 n.4. "[T]he test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Emps. Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964).

### A.     Pecuniary Result to Plaintiff

The Court first looks to the complaint's three causes of action to determine whether the pecuniary result to Senior Ride is at least $75,000. The first cause of action seeks to void the affiliate agreement as contrary to public policy, because of ITNAmerica's alleged failure to comply with the FTC's Franchise Rule[1] and because of the agreement's non-compete provisions. (Compl. ¶¶ 42–54.) The second cause of action alleges breach of contract and states that the resulting damages are less than $75,000. (*Id.* ¶¶ 55–60.) The third cause of action seeks rescission of the contract because of an alleged material breach by ITNAmerica so substantial as to defeat the purpose of the contract. (*Id.* ¶¶ 61–65.)

---

[1] The complaint makes obscure references to "required disclosures." (*See* Compl. ¶¶ 44–49.) The FTC's Franchise Rule requires franchisors to provide all potential franchisees with a disclosure document containing 23 specific items of information about the offered franchise, its officers, and other franchisees. 16 C.F.R. pts. 436–37. An earlier version of the complaint explicitly stated that disclosures required under the Franchise Rule were not made. Complaint ¶¶ 42–49, *Senior Ride Connection v. ITNAmerica*, Civ. No. 2:16-36-RMG (D.S.C. removed Jan. 6, 2016). The notice of removal for that earlier complaint asserted federal question jurisdiction because the complaint alleged a violation of the federal Franchise Rule. Notice of Removal, *Senior Ride Connection*, Civ. No. 2:16-36-RMG. However, it is well-settled that there is no federal private right of action to enforce the Franchise Rule, *see, e.g., Holloway v. Bristol-Meyers Corp.*, 485 F.2d 986 (D.C. Cir. 1973); *Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 368, 371 (D. Md. 1989); *Days Inn of Am. Franchising, Inc., v. Windham*, 699 F. Supp. 1581 (N.D. Ga. 1988); 72 Fed. Reg. 15,478 n.350 (Mar. 30, 2007) ("We note that there is no private right of action to enforce the Franchise Rule."), and it is also well-settled that there is no federal question jurisdiction where a complaint alleges "a violation of a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation," *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986).

The complaint "explicitly disclaims any damages, injunctive relief, and/or restitution." (*Id.* ¶ 5 (emphasis in original).) That disclaimer arguably contradicts the second cause of action, which states that the "value" of damages caused by ITNAmerica's alleged breach of contract "does not exceed $75,000." (*Id.* ¶ 60.) Senior Ride's third cause of action seeks contract rescission as a remedy for ITNAmerica's alleged breach of contract; it is not clear what additional remedy, other than damages, could be available. The purpose of the second cause of action is unclear and its viability questionable, but those issues are not germane to the Court's subject-matter jurisdiction inquiry. Complaint paragraph 60 is ambiguous, the disclaimer of damages in paragraph 4 is unambiguous, and any doubts as to jurisdiction weigh in favor of remand. *See In re Blackwater Sec. Consulting*, 460 F.3d at 583. Therefore, for jurisdictional purposes, the Court will not read a claim for money damages into the second cause of action.[2]

Noting that in Paragraph 65 of the complaint, "Plaintiff specifically 'requests that the Court return the Parties to the status quo prior to the contract, which would allow Plaintiff to operate its transportation business as its own entity under a different name,'" ITNAmerica argues that a return to the *status quo ante* necessarily means disgorgement of all monies paid under the affiliate agreement—an amount greater than $75,000. (Opp'n Remand 2–4, May 31, 2016, Dkt. No. 10 (quoting Compl. ¶ 65).) That is perhaps a possible reading, but it is more persuasive to read Paragraph 65 as seeking release from the agreement's non-compete provisions, due to ITNAmerica's alleged breach, especially since any doubts as to jurisdiction weigh in favor of remand. *See In re Blackwater Sec. Consulting*, 460 F.3d at 583.

---

[2] Senior Ride argues, successfully, that the complaint seeks no money damages. (Mot. Remand 5; Reply Supp. Remand 4.) Having successfully litigated that position, Senior Ride will be judicially estopped from later taking a contrary position in the prosecution of this action. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Having no other support from the text of the complaint for its jurisdictional theory, ITNAmerica further argues that rescission necessarily places in controversy all payments made under the affiliate agreement. To support that argument, ITNAmerica cherry-picks quotations from several cases to create the illusion of a *per se* rule holding that a contract's entire value is the amount in controversy when rescission is sought. Defendant's cases provide no support for that proposition and are, in fact, entirely irrelevant to the motion *sub judice*. For example, in *Rosen v. Chrysler Corporation*, the Sixth Circuit held that potential offsets (in that case, the resale value of a Grand Cherokee automobile) are not considered in determining whether the amount in controversy requirement is met. 205 F.3d 918, 921–22. Here, Senior Ride does not claim that the amount in controversy is insufficient because of an offset to damages. In *Ly v. IDC Construction, LLC*, the plaintiffs hired the defendants to remove hurricane debris removal. Order 2–3, Civ. No. 06-1133-LG (S.D. Miss. Jan. 12, 2007). When Plaintiffs later refused to pay for the debris removal, the defendants filed construction liens. *Id.* at 3. Plaintiffs responded by filing an action for contract rescission. *Id.* The amount in controversy clearly was the amount of the contracts (more than $800,000). *Id.* 3–4. Here, Senior Ride is not trying to void $800,000 in property liens. In *Taguinod v. World Savings Bank*, the plaintiffs sought rescission of a loan contract after disbursement of the loan proceeds, termination of a resulting security interest in property, and a permanent injunction against foreclosure. Notice of Removal, Civ. No. 10-7864-SVW (C.D. Cal. filed Oct. 20, 2010). Because the loan amount was $735,000, the amount in controversy requirement was satisfied. Order 3–4, *Taguinod*, Civ. No. 10-7864-SVW (Dec. 2, 2010). Here, Senior Ride is not trying to void a $735,000 property mortgage.

ITNAmerica also argues Senior Ride's disclaimer of restitution is ineffective because Senior Ride disclaimed restitution, a remedy distinct from rescission; according to ITNAmerica,

rescission requires restitution but if the word restitution is used in the context of rescission then restitution refers to a different remedy altogether. Therefore, restitution cannot be disclaimed when rescission is sought. (Opp'n Remand 3 n.1.) ITNAmerica's argument is opaque and, to the extent that the Court can discern it at all, strained. Literally, rescission is an "unmaking of a contract for a legally sufficient reason . . . . Also termed *avoidance*." Rescission, Black's Law Dictionary (10th ed. 2014). As a matter of semantic logic, Senior Ride certainly can seek to avoid the affiliate agreement without also seeking restitution for its past performance.

Substantively, however, the remedy of rescission is more than the literal rescission of a contract, and ITNAmerica's point seems to be that restitution is an essential aspect of remedial rescission. Rescission typically means more than termination—rescission unwinds the contract and returns the parties to the *status quo ante*, which typically requires restitution for past performance. *See* Restatement (Third) of Restitution and Unjust Enrichment § 54(2) (2011) ("Rescission requires a mutual restoration and accounting in which each party (a) restores property received from the other, to the extent such restoration is feasible . . . ."); *id.* cmt. a. ("Rescission is the common, shorthand name for a composite remedy (more fully, 'rescission and restitution') . . . ."). However, the only restitution that limits the availability of rescission is restitution *to the defendant. Id.* §§ 37, 54(3) (also providing exceptions to the rule that "[r]escission is limited to cases in which counter-restitution by the claimant will restore the defendant to the status quo ante"). It would be absurd to hold that rescission cannot avoid a contract if full restitution for the plaintiff is unavailable (*e.g.*, where the defendant is judgment-proof) or undesired. Where, as here, the plaintiff has disclaimed its own restitution explicitly and

unambiguously, the Court cannot invent subject-matter jurisdiction by nonetheless assuming that such restitution is sought.[3]

The complaint does not seek $75,000 or more in relief for Senior Ride. The pecuniary result for Senior Ride of judgment in its favor would be avoidance of fees payable under the agreement for a further year ($7,500 for 2015, *see* Compl. ¶ 27), and avoidance of a covenant not to compete for two years (the covenant not to compete extends one year after termination, Affiliate Agreement, Dkt. No. 1-3 at 20). Since Senior Ride is a non-profit organization, its profit from avoiding the non-compete provision over any period is zero. This action's pecuniary result for Senior Ride therefore is at most $7,500.[4]

### B.   Pecuniary Result to Defendant

ITNAmerica asserts that judgment for Senior Ride would impose two pecuniary results on ITNAmerica: "ITNAmerica would be forced to disgorge far in excess of $75,000" and "ITNAmerica [would] have to expend approximately $125,000 to replace the services that Plaintiff currently provides." (Notice of Removal 3.) As explained above, judgment for Senior Ride would not force ITNAmerica to disgorge anything. ITNAmerica claims that the pecuniary result of a

---

[3] Nor is rescission a form of injunctive relief, as ITNAmerica claims. (*E.g.*, Notice of Removal 3; Opp'n Remand 1.) Rescission as a judicial remedy is "a judgment rescinding the contract." Rescission, Black's Law Dictionary (10th ed. 2014). A judgment is a final determination of the rights and obligations of the parties. Judgment, *id.* Injunctions are not determinations of the rights and obligations of parties; rather, they are orders specifically directed at parties, which command or prohibit some specified act. *See Teshome-Gebreegziabher v. Mukasey*, 545 F.3d 285, 291–92 (4th Cir. 2008) (Michael, J., dissenting from denial of rehearing *en banc*). In the present case, injunctive relief is not prayed for and it is explicitly disclaimed.

[4] The avoidance of certain other agreement termination terms, such as the forced lease or sublease to ITNAmerica of property owned or leased by Senior Ride, may be valuable to Senior Ride or detrimental to ITNAmerica. (*See* Affiliate Agreement, Dkt. No. 1-3 at 19–20.) Those provisions were not specifically referenced in the Notice of Removal or the parties' briefing, so the Court does not consider them except to the extent that they are part of ITNAmerica's arguments regarding the cost of developing a new affiliate in the Charleston area, which the Court addresses in Part III.B, *infra*.

judgment for Senior Ride would be approximately $125,000 because it would cost about that much to develop a replacement ITNAmerica affiliate in Charleston. The Court rejects that argument for three reasons.

First, ITNAmerica's claim that judgment would produce costs of $125,000 is entirely unsubstantiated. The pecuniary result to a defendant of an adverse judgment cannot be whatever the defendant says it is. Were that the case, every civil case with diverse parties could be removed to federal court, and the statutory amount in controversy requirement would be mere surplusage. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (courts should "give effect, if possible, to every clause and word" of a statute). Thus, a defendant must offer some support for its claims regarding the pecuniary result of a judgment. Yet ITNAmerica offers no support whatsoever for its claim of $125,000 in new affiliate costs. ITNAmerica founder and president Katherine Freund's declaration in support of removal only states, "If Plaintiff dissociates from ITNAmerica, it will require approximately $125,000 to start a new affiliate organization of the ITNAmerica network in Charleston County, South Carolina, just for the first year of operations." (Decl. of Katherine Freund ¶ 6, April 25, 2016, Dkt. No. 1-2.) The Court cannot accept that unsupported, self-interested, and conclusory assertion from a party to the litigation. An amount alleged in good faith in a *complaint* is sufficient to meet the amount in controversy requirement for federal jurisdiction, unless it is a legal certainty that the plaintiff could not recover that amount. *Shanaghan*, 58 F.3d at 111. But the removal statute is strictly construed *against* removal jurisdiction, and because doubts weigh against removal jurisdiction, something more than an unsupported, conclusory assertion is needed (typically, support for the claimed amount in controversy would be found *in the complaint*). *See In re Blackwater Sec. Consulting*, 460 F.3d at 583.

Second, it is obvious that the one-year cost to ITNAmerica of finding another Charleston affiliate is not $125,000. That is a capitalization requirement for new affiliates. (*See* Decl. of Jim Ledbetter ¶¶ 5–6, May 20, 2016, Dkt. No. 5-2 ("ITNAmerica does not disburse $125,000 to start a new affiliate organization. . . . [A]n affiliate wishing to join ITNAmerica must raise approximately $125,000 for operational funds before being accepted [as] an affiliate in the ITNAmerica network. This money is for capitalization of the local affiliate and is not paid to ITN America.").) Furthermore, Senior Ride's point about Ms. Freund's declaration is well taken: she never says that a new affiliate would cost ITNAmerica $125,000 (or anything else). (Reply Supp. Remand 2 n.1.) Instead, she says that a new affiliate would "require" approximately $125,000. (Freund Decl. ¶ 6.)

In response to Mr. Ledbetter's point, ITNAmerica claims that Senior Ride is ignorant of the costs of forming a new Charleston ITNAmerica affiliate because Senior Ride's "experience [with ITNAmerica] was unique in that it was already a functioning and operational organization" when it joined ITNAmerica. (Opp'n Remand 5.) Without another such organization in the Charleston area, ITNAmerica would have to build a new affiliate "from scratch." (*Id.*) In reply to that new argument, Senior Ride properly offered rebutting exhibits. *E.g.*, Decl. of Nancy Schuster, June 16, 2016, Dkt. No. 16-1 (former executive director of former ITNAmerica affiliate in Cincinnati describing affiliate requirement to meet capitalization requirements without assistance from ITNAmerica); Ron MacArthur, *Network offers senior transportation options*, Cape Gazette, July 28, 2015, Dkt. No. 16-3 at 5 (describing fundraising of $169,500 to create an ITNAmerica affiliate in Delaware); Ctr. for Gov't Research, *Senior Transportation Services in Dutchess County: Challenges and Opportunities*, Oct. 2007, Dkt. No. 16-3 at 22 (describing fundraising requirement of $135,000 for an ITNAmerica affiliate in New York). ITNAmerica

should have sought leave to file a sur-reply if it wished to respond to Senior Ride's reply. Instead, ITNAmerica disguised its sur-reply as an evidentiary "objection" to a reply brief supporting a pre-answer motion on a jurisdictional matter. (Obj. to Reply, June 21, 2016, Dkt. No. 18.) The Court rejects that "objection" in which ITNAmerica yet again self-servingly asserts, without any support or explanatory discussion, that "it will cost ITNAmerica approximately $125,000 to fill that [affiliate] vacancy." (*Id.* 3.)

Third, affiliate replacement costs to ITNAmerica are not cognizable as part of the amount in controversy in this matter. ITNAmerica agreed to give Senior Ride a contractual right to disassociate from ITNAmerica; the cost to ITNAmerica of an exercise of that right is part of the agreed bargain. (*See* Affiliate Agreement, Dkt. No. 1-3 at 19–20.) It is in no sense a pecuniary result of this litigation. The pecuniary result of this litigation for ITNAmerica is the additional cost to ITNAmerica of Senior Ride's disassociation via avoidance of the contract versus dissociation via the agreement's termination provisions. In other words, the benefit to ITNAmerica of a favorable judgment would be $7,500 in franchise fees and the exclusion of Senior Ride from the Charleston market for two years. (*See* Compl. ¶ 27; Affiliate Agreement, Dkt. No. 1-3 at 20.) That competitive vacuum might be valuable for developing a new ITNAmerica affiliate in Charleston. *Cf.* Order, *ITNAmerica v. Nutmeg Senior Rides, Inc.*, Civ. No. 2:15-96-NT (D. Me. Sept. 8, 2015) (finding the amount in controversy requirement satisfied where ITNAmerica, as plaintiff, alleged that the defendant's "on-going breach of the non-compete provision has made it impossible to find a new affiliate, and because it is plausible that finding a new affiliate could potentially be worth $82,500 to the Plaintiff, it is not legally certain that the Plaintiff's claim is worth less than $75,000"). However, since ITNAmerica is a nonprofit organization, the marginal

benefit of establishing a presence in Charleston is unclear.[5] Regardless, ITNAmerica does not attempt to explain the monetary value of the non-compete agreement (or the value of other termination terms, such as forced property leases). The Court cannot—and will not—attempt to calculate, *sua sponte*, the monetary value to ITNAmerica of Senior Ride's covenant not to compete in a market where ITNAmerica is not otherwise present. That was ITNAmerica's burden. *In re Blackwater Sec. Consulting*, 460 F.3d at 583. It has failed to meet that burden.

The pecuniary results for Plaintiff of a judgment would be about $7,500; Defendant has not established that the pecuniary result for it would be much more. The amount in controversy in this matter is far below $75,000. Because the Court lacks subject-matter jurisdiction over this matter, it cannot reach Plaintiff's motion to transfer, which is made moot by remand to state court.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to remand (Dkt. No. 5), **DENIES AS MOOT** Plaintiff's motion to transfer, or, in the alternative, to dismiss (Dkt. No. 4), and **REMANDS** this matter to the South Carolina Court of Common Pleas for the Ninth Judicial Circuit.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

June 3⌀, 2016
Charleston, South Carolina

---

[5] Businesses typically enter new markets to earn profits.